1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

8      BATES DRUG STORES, INC.,

9                            Plaintiff,

10             v.

11     ERIC H. HOLDER, JR., Attorney
       General of the United States,
12     United States Department of
       Justice; MICHELLE M. LEONHART,
13     Administrator Drug Enforcement
       Administration, United States
14     Department of Justice; and DRUG
       ENFORCEMENT ADMINISTRATION, United
15     States Department of Justice,

16                            Defendants.

NO. CV-11-0167-EFS

**ORDER GRANTING TEMPORARY
RESTRAINING ORDER AND
SETTING PRELIMINARY
INJUNCTION HEARING**

17

18     A hearing occurred in the above-captioned matter on May 4, 2011, in

19     Spokane, Washington.   Jeffrey Bornstein, Leeanne Hartmann, and Todd

20     Reuter appeared on Plaintiff Bates Drug Stores, Inc.'s ("Bates") behalf.

21     Andrew Biviano and Larry P. Cote appeared on behalf of Defendants Eric

22     H. Holder, Jr., Michelle M. Leonhart, and the Drug Enforcement

23     Administration ("DEA"), who received notice of the lawsuit and instant

24     motion.   Before the Court was Plaintiff's Motion for Temporary

25     Restraining Order (ECF No. 3), filed April 27, 2011.   Bates seeks a

26     temporary order preventing Defendants from enforcing a March 30, 2011

       order ("Suspension Order") (ECF No. 1, Ex. 1) that immediately suspended

ORDER ~ 1

1   Bates' registration to distribute controlled substances.  The DEA opposes

2   the motion.    After reviewing the submitted material and relevant

3   authority and hearing from counsel, the Court was informed and granted

4   Bates' motion.  This Order memorializes and supplements the Court's oral

5   rulings.

6   **A.    Background**

7        Bates is comprised of two small employee-owned pharmacies operating

8   in Spokane, Washington: one pharmacy serves "retail" customers (such as

9   individuals and physicians), while the other serves institutions such as

10  long-term care facilities.  Both are registered with the DEA to dispense

11  controlled substances in Schedules II-IV of the Controlled Substances

12  Act, 21 U.S.C. § 801 et seq. ("CSA"), and thus are subject to DEA

13  regulation and oversight.

14       The CSA establishes controls on import, export, manufacture, and

15  distribution of controlled substances.   21 U.S.C. § 801 *et seq.;* 21

16  U.S.C. § 951 *et seq*.    The CSA requires all controlled substance

17  distributors to register with the DEA.  *Id*. § 822; *see also* 21 C.F.R. §

18  1301.11 (DEA regulations requiring registration).    The DEA has the

19  authority to revoke such registration if, for example, the registrant

20  acts in a manner inconsistent with the public interest.   21 U.S.C. §

21  824(a) (articulating five grounds for revoking or suspending a

22  registration).  Before suspending or revoking the registration, the DEA

23  must issue an order to show cause setting forth the DEA's basis for

24  initiating proceedings and provide an administrative hearing not less

25  than thirty days after the date the show-cause order was served.  *Id*. §

26  824(c).

ORDER ~ 2

1    The DEA may, in its discretion, suspend any registration immediately

2  (before any administrative hearing), if it finds that a registrant's

3  continued registration would pose "an imminent danger to the public

4  health or safety." *Id*. § 824(d).  As with § 824(a) suspensions, the DEA

5  must provide a basis for its suspension in the order to show cause.  *Id*.;

6  21 C.F.R. § 1301.36(e).  A § 824(d) suspension remains in effect until

7  the DEA issues a final order unless the suspension is withdrawn by the

8  Attorney General or dissolved by a court of competent jurisdiction.  21

9  U.S.C. § 824(d).

10    On November 15-18, 2010, the DEA investigated and audited Bates'

11  pharmacies.  On March 30, 2011, the DEA issued a Suspension Order,

12  immediately suspending Bates' registrations based on the belief that

13  Bates' continued registration constituted an imminent danger to the

14  public health and safety.  In response, Bates submitted a hearing request

15  to the Office of Administrative Law Judges (ALJ) on April 11, 2011, for

16  review of the DEA's suspension and issuance of a final order.[1]

17    On April 27, 2011, Bates filed this action, challenging the

18  Suspension Order as arbitrary, capricious, or inconsistent with law, and

19  seeking to permanently enjoin the DEA from enforcing it.  The instant

20  motion was filed the same day.

21  **B.   Discussion**

22    Bates asks the Court to issue a temporary restraining order to

23  temporarily enjoin the DEA from enforcing the Suspension Order pending

24  _____

25    [1]  The ALJ granted Plaintiff's request and set hearings on April 27,

26  2011, and May 10, 2011.  The parties anticipate the proceedings will

conclude with the issuance of a final order in August 2011.

ORDER ~ 3

1  the outcome of a preliminary injunction hearing.  A temporary restraining

2  order may be issued to maintain the status quo if a plaintiff establishes

3  he is "likely to succeed on the merits, that he is likely to suffer

4  irreparable harm in the absence of preliminary relief, that the balance

5  of equities tips in his favor, and that an injunction is in the public

6  interest."  *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374

7  (2008).   The Ninth Circuit uses a "sliding scale" under which the

8  temporary restraining order may be issued if there are serious questions

9  going to the merits and the balance of hardships tips sharply in the

10  plaintiff's favor, along with satisfaction of the two other *Winter*

11  factors.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135

12  (9th Cir. 2011).

13      The Court finds, on the brief record before it, that this standard

14  has been met.  First, Bates is likely to suffer irreparable harm in the

15  absence of a temporary injunction enjoining the DEA's enforcement of the

16  Suspension Order.  Plaintiff will likely suffer harm in the form of lost

17  revenue, harm to reputation and goodwill, fees and costs to remedy DEA

18  findings, inability to obtain financing, and loss of third-party

19  insurance providers.  This harm is not speculative: Plaintiff's revenue

20  dropped twenty percent (20%) in the first twenty (20) days following the

21  Suspension Order, which translates to approximately $70,000 loss in gross

22  profits and $50,000 loss in net profits each month.  (ECF No. 7, p. 2-3.)

23  A third-party billing provider already exercised its right to terminate

24  its contract with Bates based on its license suspension.  (ECF No 9, Ex.

25  D.)   Bates' president and CEO Robert Cordier insists layoffs are

26  imminent. (ECF No. 9, p. 10.)   The evidence shows that the Suspension

ORDER ~ 4

1   Order threatens Bates' very existence.  Accordingly, irreparable harm is

2   likely.

3       Second, Bates demonstrated serious questions relating to whether the

4   DEA's finding of an imminent danger in its Suspension Order is arbitrary,

5   capricious, or inconsistent with law.  Under the Administrative Procedure

6   Act (APA), the Court may set aside agency action that is "arbitrary,

7   capricious, an abuse of discretion, or otherwise not in accordance with

8   the law."  5 U.S.C. § 706(2)(a).[2]  The Court must determine whether there

9   is a rational connection between the underlying facts and the agency's

10  decision.  *See Burlington Truck Lines, Inc. v. United States*, 371 U.S.

11  156, 168 (1962).  As such, the Court's review of the facts is limited to

12  the record before it at the time of the agency decision.  *Beno v.*

13  *Shalala*, 30 F.3d 1057, 1074 (9th Cir. 1994).

14      Here, the Court cannot consider the administrative record because

15  one does not exist.  And while the Suspension Order identifies numerous

16  CSA violations discovered by DEA investigators at the pharmacies,[3] it

---

18      [2]   In reviewing agency action, the Court is not authorized to

19  "substitute its judgment for that of the agency" but must "consider

20  whether the decision was based on a consideration of the relevant factors

21  and whether there has been a clear error of judgment."  *Citizens to*

22  *Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416(1971).

23

24      [3]   These include accepting returns of controlled substances from

25  long-term care facilities, dispensing controlled substances to patients

26  via prescriptions that did not contain all essential elements, refilling

prescriptions for Schedule II controlled substances, dispensing

ORDER ~ 5

1  lacks  specific  facts  demonstrating  how  those  alleged  violations  were

2  committed.    Yet  investigative  sources  confirm  that  Bates  regularly

3  accepted returns of controlled substances from its customers and then re-

4  dispensed  the  controlled  substances  to  others.    (ECF No. 33-1, Ex. A, ¶

5  16-19.)    They also advise that Bates maintains inaccurate records and

6  does not notify the DEA when it destroys returned controlled substances.

7  *Id*. ¶ 20.    On one occasion, Bates delivered a controlled substance to a

8  long-term  care  facility  in  order  to  help  the  facility  account  for  a

9  shortage  of  tablets.    *Id*. ¶ 13.    Several  additional  record-keeping  and

10  prescription  irregularities  were  discovered  during  the  course  of  the

11  investigation.

12      The Court  understands  these  practices  can  result  in  the  illegal

13  diversion, theft, tampering with, or unintended dispensing of dangerous

14  and  addictive  controlled  substances  to  the  general  public  for  improper

15  use.    Nothing  in  the  record  demonstrates  that  any  of  those  dangerous

16  consequences  occurred  here.    Additionally,  the  Court  has  serious  doubts

17  that  the  alleged  violations,  which  Bates  has  been  diligently  working  to

18

19  controlled substances before the prescription's issue date, repackaging

20  and  re-labeling  controlled  substances  without  being  registered  as  a

21  manufacturer,    dispensing    controlled    substances    to    individual

22  practitioners  for  their  general  office  supply,  failing  to  maintain

23  prescriptions for controlled substances, failing to provide effective

24  controls to guard against theft and diversion of controlled substances,

25  and failing to maintain several required record keeping practices.  (ECF

26  No. 1, Ex. 1.)

ORDER ~ 6

correct,[4] pose an *imminent* danger to public health and safety.  There is nothing in the record indicating that any Bates patient has been harmed or injured by the alleged violations.  Nor is there any evidence that any controlled substance was dispensed to an improper individual, for an improper purpose, or in an improper dosage.  Rather, the evidence shows that, despite these violations, the pharmacy acted with intent to provide quality care to its patients.  On this record, the Court finds that serious questions exist as to whether the Suspension Order supports a finding that Bates' practices posed an imminent danger to the public health and safety.  Accordingly, the Bates had demonstrated a likelihood of success on the merits.

Third, the balance of equities tips sharply in Bates' favor.  The public has an interest in the DEA's continued diligent regulation of controlled substances, particularly those narcotics with street value.  However, the Suspension Order was not issued in the abstract: it impacts the lives of countless human beings.  Bates' interest in providing continued care to its customers in need of medicine, employment to its employees, and support to patients in long-term care and assisted-living facilities tips the balance of equities in Bates' favor.

Fourth, a temporary restraining order is in the public interest.  As discussed, Bates was acting in the public interest to provide medical support for its patients.  The alleged violations, although serious, are nevertheless correctable and have not harmed any customer, patient, or

---

[4]  After the November 2010 DEA audit, Bates hired an independent consultant and developed and implemented policies and procedures to remedy the DEA's concerns.  (ECF No. 9, pp. 3-6.)

ORDER ~ 7

1  member of the public.  As recognized above, the health and livelihood of

2  countless individuals – both employees and patients – depend on Bates.

3  Continuation of the Suspension Order would have an irreparable effect on

4  all those people and, thus, a temporary restraining order is in the

5  public interest.

6  **C.   Conclusion**

7       For the reasons set forth above, the Court grants Plaintiff's

8  request for a temporary restraining order.  Accordingly, **IT IS HEREBY**

9  **ORDERED:**

10       1.   Plaintiff's Motion for Temporary Restraining Order **(ECF No. 3)**

11  is **GRANTED.**

12       2.   Plaintiff shall immediately post a **$1,000.00 bond** with the

13  Clerk's Office.

14       3.   Defendants shall immediately return any registrations,

15  licenses, or forms required to make this temporary restraining order

16  effective.

17       4.   Until the Court rules on the Motion for Preliminary Injunction

18  or fourteen (14) days, whichever is earlier, **Defendants are enjoined from**

19  **enforcing the March 30, 2011 Suspension Order that immediately suspended**

20  **Bates' registration to distribute controlled substances (ECF No. 1, Ex.**

21  **1).**

22       5.   A preliminary injunction hearing is **SET** for **Wednesday, May 18,**

23  **2011, at 9:00 a.m. in SPOKANE.**

24       6.   **NO LATER THAN Monday, May 9, 2011, at 12:00 p.m.**, the parties

25  shall meet and confer and file a report setting forth any matters to be

26  /

ORDER ~ 8

1   addressed before or at the May 18, 2011 hearing.

2        **IT IS SO ORDERED.**   The District Court Executive is directed to file

3   this Order and provide copies of this Order to counsel.

4        **DATED** this _____6th_____ day of May 2011.

5

6                          _____
                                    S/ Edward F. Shea
                                    EDWARD F. SHEA
7                            United States District Judge

8
    Q:\Civil\2011\167.TRO.wpd
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26


    ORDER ~ 9